IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| **Plaintiff,** | |
| v. | Case No. 23-CR-163-JFH |
| BRADLEY KYLE VINEYARD, | |
| **Defendant.** | |

## OPINION AND ORDER

Before the Court are two motions filed by Defendant Bradley Kyle Vineyard ("Defendant"): a Motion to Suppress Evidence, Request Evidentiary Hearing, and Brief in Support ("Motion to Suppress") [Dkt. No. 26] and a Motion to Exclude Expert Witness Testimony ("Motion to Exclude") [Dkt. No. 37]. The Government filed a response in opposition to the Motion to Suppress [Dkt. No. 36] and a response in opposition to the Motion to Exclude [Dkt. No. 46]. After seeking leave, Defendant filed a reply brief in support of his Motion to Suppress. Dkt. No. 49. The Court will address both Defendant's Motion to Suppress [Dkt. No. 26] and Motion to Exclude [Dkt. No. 37] below.

### BACKGROUND

At approximately 5:26 p.m. on November 17, 2022, a two-vehicle head-on collision occurred on State Highway 1 approximately one mile south of Mill Creek, Oklahoma. Dkt. No. 39-1 at 1. Defendant, the driver of a Chevrolet Avalanche, crossed over the center line into oncoming traffic and struck a Chevrolet Silverado, driven by J.K., head-on. *Id.* at 1-2. J.K., Defendant, and Defendant's passenger, B.V., all sustained great bodily injury as a result of the collision. Dkt. No. 36 at 1.

Oklahoma Highway Patrol ("OHP") officers responded to the scene. *Id*. At that time, OHP Officer Noe Martinez ("Officer Martinez") attempted to speak with Defendant, but, due to the severity of his injuries, Defendant was unable to communicate. *Id*.; Dkt. No. 39-1 at 2. Officer Martinez also attempted to obtain Defendant's blood sample at the scene, but emergency responders advised that they were unable to do so due to Defendant's condition. *Id*.; Dkt. No. 26 at 1. Defendant and B.V. were transported to the University of Oklahoma Medical Center by medical helicopter and J.K. was transported to Plano Medical Center by medical helicopter; all were in critical condition. Dkt. No. 36 at 2. B.V. and J.K. later died as a result of injuries sustained in the collision. *Id*.

OHP Trooper Joshua Christian ("Trooper Christian") with the OHP Traffic Homicide Unit was contacted to assist in the investigation into the cause of the collision. *Id*.; Dkt. No. 39-1 at 2. Based on his knowledge and experience that "blood evidence is critical in investigations involving a vehicle that has traveled left of center," Trooper Christian submitted an affidavit for search warrant for Defendant's blood sample to test for alcohol or other intoxicating substances. Dkt. No. 39-1 at 2. Trooper Christian's affidavit cited Defendant's vehicle crossing over the center line and the severity of the collision and resulting injuries as the basis for search warrant. *Id*.

An Oklahoma County District Court judge approved the issuance of the warrant at 7:45 p.m. on November 17, 2022 and Trooper Christian executed the search warrant shortly thereafter. Dkt. No. 36 at 2; Dkt. No. 39-2 at 1-2. The next day, Defendant's blood sample was submitted to the Oklahoma State Bureau of Investigation ("OSBI") for laboratory testing. Dkt. No. 36 at 2. The OSBI's testing detected the presence of delta-9-tetrahydrocannabinol ("THC") in Defendant's blood sample. *Id*.

On September 13, 2023, Defendant was indicted on two counts of Involuntary Manslaughter in Indian Country, in violation of 18 U.S.C. §§ 1112, 1151, and 1153, for the deaths of J.K. and B.V. Dkt. No. 2. This matter is set for jury trial on the Court's January 8, 2024 docket. Dkt. No. 51.

On October 31, 2023, the Government gave notice of its intent to introduce the testimony of its expert witness Dr. Jarrad R. Wagner ("Dr. Wagner") under Federal Rules of Evidence 701, 702, and 703. Dkt. No. 32. In his expert report, Dr. Wagner opined that "the presence of cannabis-related chemicals can't be ruled out as a factor in the fatality crash" and further that "impaired judgment, impaired perceptions, impaired coordination and sensory-motor impairment possibly played a role in [Defendant] proceeding into oncoming traffic, consistent with the impairment expected from cannabis." Dkt. No. 32-2 at 3. Dr. Wagner based his opinion on his review of the OHP Vehicle Death Case File, which included the search warrant, affidavit, and OSBI toxicology report, as well as Defendant's medical records from the University of Oklahoma Medical Center, his own knowledge and experience, and several journal articles related to the use of cannabis and its effect on driving. *Id*. at 1, 3-4. Dr. Wagner's report further explained the standard practice and procedure for conducting and issuing a toxicology report, the typical effects of cannabis with respect to driving, the impact of chronic versus novice cannabis use, and further provided insight as to why there is no "per se level for cannabis impairment in drivers." *Id*. at 2. The Government intends to call Dr. Wagner as an expert witness to testify consistent with his report.

## AUTHORITY AND ANALYSIS

### I. Motion to Suppress [Dkt. No. 26]

The Court will first address Defendant's request for a hearing on his Motion to Suppress. An evidentiary hearing on a motion to suppress is only required when the motion to suppress

"raises factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *United States v. Glass*, 128 F.3d 1398, 1408-09 (10th Cir. 1997) (citing *United States v. Chavez–Marquez*, 66 F.3d 259, 261 (10th Cir. 1995)). Here, Defendant does not dispute the facts as stated in the affidavit, but rather argues their legal significance. Therefore, a hearing is not required and Defendant's request for a hearing is denied.

    a. Probable Cause

"To be constitutional, a search warrant must issue only upon probable cause." *United States v. Burns*, 624 F.2d 95, 99 (10th Cir. 1980). "This requires more than mere suspicion but less evidence than is necessary to convict." *Id.* Probable cause requires that there are sufficient facts available "for a reasonably prudent person to believe that a search of the described [place] would uncover evidence of a crime." *Id.* (internal citation omitted).

A magistrate judge issuing a search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In making this determination, a magistrate judge "may draw reasonable inferences from the material provided in the warrant application." *United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir. 1998).

"A reviewing court should accord great deference to a magistrate's determination of probable cause." *United States v. Reed*, 195 F. App'x 815, 822 (10th Cir. 2006) (unpublished). The Court's duty is "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39. In determining whether an affidavit supports a finding of probable cause, the Court must review the affidavit as a whole and look to

the totality of the information contained therein. *United States v. Bishop*, 890 F.2d 212, 215 (10th Cir.1989), *cert. denied*, 493 U.S. 1092 (1990).

Defendant argues that Trooper Christian's affidavit relied upon the fact of the collision alone and was not sufficiently supported by probable cause to issue a search warrant for Defendant's blood sample. Dkt. No. 26 at 2. The Government seems to concede this point, as it does not argue that the search warrant was supported by probable cause, but rather that the evidence obtained as a result of the search warrant is nonetheless admissible under the good faith exception to the exclusionary rule. *See* Dkt. No. 36. The Court notes that other circuit courts have indicated that probable cause to believe that a person is under the influence of alcohol or other intoxicating substances ordinarily requires more showing than a routine traffic accident. *See e.g., United States v. Blakeney*, 949 F.3d 851, 859-60 (4th Cir. 2020) (citing *Cuvo v. De Biasi*, 169 F. App'x 688, 690 (3d Cir. 2006) (unpublished) (holding that a finding of probable cause requires "some evidence independent of the accident itself")). Here, the affidavit requests the issuance of a warrant, no doubt, based upon the traffic accident.[1] The Government does not argue, and for reasons set forth below, this Court need not decide, whether the "serious nature of the incident" and the circumstance of Defendant veering his vehicle "left of center" into an oncoming vehicle during daylight hours would take this outside of a routine traffic accident. Dkt. No. 39-1 at 1.

b. *Exclusion of Evidence*

The exclusionary rule bars the introduction of evidence obtained without probable cause and in violation of the Fourth Amendment. *Herring v. United States*, 555 U.S. 135, 139 (2009). However, "suppression is not an automatic consequence of a Fourth Amendment violation." *Id*.

---

[1] The Court acknowledges that there was likely little other information available to OHP at the time of the investigation due to the nature of the collision and Defendant's critical condition.

at 137. "[I]f a warrant is not supported by probable cause, the evidence seized pursuant to the warrant need not be suppressed if the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate." *United States v. Edwards*, 813 F.3d 953, 970 (10th Cir. 2015). This is commonly referred to as the "good faith exception" to the exclusionary rule. *Id*.

A law enforcement officer's reliance upon a search warrant issued by a neutral magistrate judge "creates a presumption that the officer is acting in good faith." *United States v. Chambers*, 882 F.3d 1305, 1310 (10th Cir. 2018) (internal quotations and citations omitted). Here, a presumption of good faith exists because Trooper Christian relied upon the search warrant issued by the Oklahoma Country District Court judge. Good faith can further be presumed because Trooper Christian both prepared the affidavit and executed the warrant. *See United States v. Cotto*, 995 F.3d 786, 796 (10th Cir. 2021) ("[I]t is indicative of good faith when the officer who prepares an affidavit is the same one who executes a search.").

However, this good faith presumption will not apply under four (4) circumstances:

> (1) when the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his reckless disregard of the truth; (2) when the issuing magistrate wholly abandons her judicial role; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

*United States v. Augustine*, 742 F.3d 1258, 1262 (10th Cir. 2014) (internal quotations omitted) (citing *United States v. Danhauer,* 229 F.3d 1002, 1007 (10th Cir. 2000)). The Court finds that none of these circumstances are present here.

First, there is no indication that the state court judge was misled by false information or that the state court judge abandoned her judicial role in issuing the search warrant. Likewise, the

warrant itself was not facially deficient. Finally, the Court finds that the affidavit was not so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable. Under this standard, an officer cannot be said to have acted in good faith where the underlying documents are "devoid of factual support." *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005) (citing *United States v. Corral-Corral*, 899 F.2d 927, 934-35 (10th Cir. 1990)). That is not the case here. Trooper Christian's affidavit describes that Defendant's vehicle crossed the center line and ran head-on into J.K.'s vehicle, causing serious injury. Due to his critical condition at the scene of the collision, officers were unable to speak with Defendant or otherwise observe behaviors which would typically be indicative of impairment. Because of this, impairment "[could not] be determined or ruled out" and, therefore, Trooper Christian stated that "blood evidence [was] critical." Dkt. No. 39-1 at 2. Without any other reasonable explanation as to the cause of the collision, and based upon knowledge and experience with traffic collision and impaired driving investigations, a reasonably well-trained officer could conclude that the nature of the collision itself—crossing over the center line and causing a catastrophic collision—is indicative of driver impairment at the time of the collision.[2] By submitting his affidavit for search warrant on this

---

[2] In *Blakeney*, defendant argued that probable cause to believe that a person is driving under the influence of alcohol ordinarily requires more than the simple fact of a car accident. *Blakeney*, 949 F.3d at 860. He further argued that "[c]ar accidents – whether minor or severe – occur for all kinds of reasons unrelated to alcohol-induced negligence" and criticized that the warrant application did not "rule out" alternative explanations, such as mechanical failure, for the accident. *Id*. In response the court explained:

> But this misapprehends the probable cause standard, which requires only the kind of "fair probability on which reasonable and prudent people, not legal technicians," would rely . . . and does *not* require an affiant to rule out all innocent explanations for suspicious facts before seeking a warrant.

*Id. (*quoting *Florida v. Harris*, 568 U.S. 327 (2013)).

basis, Trooper Christian clearly believed that the reasoning provided constituted sufficient probable cause. The approval and issuance of the warrant by the Oklahoma Country District Court judge only confirmed Trooper Christian's belief.

For these reasons, the Court finds that Trooper Christian acted with an objectively reasonable good faith belief that his conduct was lawful. Therefore, the good faith exception to the exclusionary rule applies and the blood sample evidence need not be suppressed. For this reason, Defendant's Motion to Suppress [Dkt. No. 26] is DENIED.

## II.     Motion to Exclude [Dkt. No. 37]

Defendant seeks to exclude the testimony of the Government's expert witness, Dr. Wagner. Dkt. No. 37. Specifically, Defendant argues that Dr. Wagner's testimony is (1) not helpful to the trier of fact, (2) not based on sufficient facts or data, and (3) does not reflect a reliable applicable of the principles and methods to the facts of the case. *Id*. at 2. Defendant also asks the Court to set the Motion to Exclude for hearing "to develop the factual and evidentiary record necessary for the Court to make a proper reliability determination." *Id*. at 3.

As an initial matter, the Court is not required to hold an evidentiary hearing. *United States v. Mathews*, 928 F.3d 968, 979 (10th Cir. 2019) ("Daubert does not mandate an evidentiary hearing") (quoting *United States v. Nichols*, 169 F.3d 1255, 1962 (10th Cir. 1999)). The Court finds that it has sufficient information to rule on the briefing and, therefore, Defendant's request for a hearing is denied.

Admissibility of expert witness testimony is evaluated under Federal Rule of Evidence 702, which permits a qualified expert witness to testify and render an opinion if the proponent demonstrates to the Court that it is more likely than not that:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

      (b) the testimony is based on sufficient facts or data;

      (c) the testimony is the product of reliable principles and methods; and

      (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assur. Corp.*, 11-CV-475, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999))."First, the Court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1277-78 (W.D. Okla. 2018). "If so qualified, the Court must then determine whether the expert's opinion is reliable and relevant under the principles set forth in *Daubert* and *Kumho Tire*, in that it will assist the trier of fact." *Id*. at 1278. The party offering the expert testimony has the burden to prove that the expert is qualified and that his opinions are based in sound methodology and sufficient facts. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). Defendant does not challenge Dr. Wagner's qualifications, and so the Court assumes without deciding that he is qualified to render the anticipated opinions. It focuses instead on the relevance and reliability determination.

      Defendant argues that Dr. Wagner's proposed testimony is "irrelevant, misleading, and not helpful to the trier of fact." Dkt. No. 37 at 6. Defendant also argues that Dr. Wagner's opinion is not based on sufficient facts or data, nor does it reflect a reliable application of the principles and methods to the facts of the case. *Id*. at 2. Further, Defendant argues that Dr. Wagner's opinion is "speculative," pointing to Dr. Wagner's statement that "the presence of cannabis-related chemicals can't be ruled out as a factor in the fatality crash." *Id*. at 6.

Evidence or testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotations and citations omitted). "The 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002).

Regarding reliability, the Court must focus on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. An expert witness may rely on his experience in that field if the witness "explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis of the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's note (2000 amendment)). A trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152.

The Court finds that, for the most part, Dr. Wagner's proposed testimony is relevant and reliable. Defendant is charged with involuntary manslaughter and at trial the Government will be required to prove that Defendant operated his vehicle under conditions which might produce death. The Government intends to introduce evidence at trial to show that THC was detected in Defendant's blood sample shortly following the collision. Therefore, the effect of cannabis on driving will undoubtedly be at issue at trial.

The Court further finds that, for the most part, Dr. Wagner's testimony will be helpful to the trier of fact. Specifically, it will be helpful to the jury to know the process and procedure for issuing a toxicology report and to understand why such reports do not include a quantitative result for the amount of THC present in the sample. Further, it will be helpful to the jury to understand

how cannabis causes impairment relative to driving and how impairment may differ between novice and chronic cannabis users. While jurors may be familiar with cannabis and its effects generally, most jurors lack the technical knowledge to interpret a toxicology report and likely do not understand the potential variables which may impact cannabis-related impairment in drivers.

Based upon Dr. Wagner's extensive experience in the field of forensic toxicology, the Court exercises its discretion to determine that Dr. Wagner's testimony, as set forth above, is reliable. However, the Court finds that other portions of Dr. Wagner's testimony are unreliable and, therefore, must be limited. While Dr. Wagner may testify regarding the effects of cannabis generally, he may not testify specifically as to the effect of cannabis on Defendant, nor may he opine as to whether or not Defendant was impaired at the time of the collision. As Dr. Wagner states, "determining impairment requires observations of witnesses, law enforcement, medical personnel, and observed driving behavior" all of which were not possible in this case due to Defendant's condition following the collision. Dkt. No. 37-1 at 3. While Dr. Wagner's experience in the field of toxicology is extensive, there are simply not sufficient facts or data present for Dr. Wagner to reach a conclusion regarding Defendant's impairment at the time of the collision. The Court also agrees with Defendant that any opinion that "impairment possibly played a role" or that "cannabis-related chemicals can't be ruled out as a factor" in the collision would be speculative.

Accordingly, Defendant's Motion to Exclude [Dkt. No. 37] is GRANTED IN PART AND DENIED IN PART. It is denied in part in that Dr. Wagner's testimony will not be excluded. It is granted in part in that Dr. Wagner's testimony will be limited as set forth above. Defendant may, of course, cross-examine Dr. Wagner at trial and will have ample opportunity to address the weight and consideration that should be attributed to Dr. Wagner's testimony.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress Evidence, Request Evidentiary Hearing, and Brief in Support [Dkt. No. 26] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Exclude Expert Witness Testimony [Dkt. No. 37] is GRANTED IN PART AND DENIED IN PART as set forth in this Order.

DATED this 13th day of December 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE